IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS

WESTERN DIVISION

| | | |
|---|---|---|
| Michael Koster, | ) | |
|     Plaintiff, | ) | Case No. 20 C 50031 |
| vs. | ) | |
| Kinder Morgan, Inc., et al., | ) | Judge Philip G. Reinhard |
|     Defendants. | ) | |

## ORDER

For the reasons stated below, defendant's motion to dismiss [27] is denied.

## STATEMENT-OPINION

Plaintiff, Michael Koster, a citizen of Illinois, brings this action against defendant, Kinder Morgan, Inc., a Delaware corporation with its principal place of business in Texas, to recover for personal injuries he sustained when a gas pipeline operated by defendant exploded. The amount in controversy exceeds $75,000. Jurisdiction is proper under 28 U.S.C. § 1332(a)(1). Plaintiff alleges his injuries were caused by defendant's violation of the Illinois Public Utilities Act (220 ILCS 5/1-101 et seq.) (Count I) and by defendant's negligence and willful and wanton conduct (Count II). Defendant moves to dismiss [27] for failure to state a claim and for failure to join a necessary and indispensable party. Fed. R. Civ. P. 12(b)(6) & (7).

The following facts are taken from the complaint. On December 5, 2017, plaintiff was working as a laborer on an M & R Farms crew placing drain tile on agricultural land in Lee County, Illinois when the tiling plow struck a pipeline causing a breach in the pipeline, an explosion, and fire. The pipeline is owned by Natural Gas Pipeline Company of America, LLC "(NGPL") and operated by defendant. Defendant is a member of NGPL owning a 50% interest. Plaintiff sustained personal injuries as a result of the explosion and fire including second and third degree burns over 65% of his body.

The M & R Farms crew was unaware there was a pipeline beneath the land near where they were placing the drain tile. The complaint alleges defendant had not adequately communicated the location of the pipeline to the public (through the dissemination of maps or other means) and had failed to properly maintain line markers on the surface to alert people to the presence of the underground pipeline, thereby failing to alert the M & R Farms crew to the presence of the underground pipeline their tiling plow struck.

Required Party (12(b)(7))

Defendant argues the case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join a necessary and indispensable party under Fed. R. Civ. P. 19. Defendant argues NGPL, as the owner of the pipeline, is a necessary and indispensable party that plaintiff failed to join in order to preserve diversity of citizenship jurisdiction. Defendant contends that the statute of limitations has run as to NGPL so it cannot now be joined and therefore the entire action must be dismissed.

This is a tort case. "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990). "The Advisory Committee Notes to Rule 19(a) explicitly state that 'a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability'." Id. The Advisory Committee Notes to Rule 19(a) go on to state "[j]oinder of these tortfeasors continues to be regulated by Rule 20[1]; compare Rule 14 on third-party practice." Fed. R. Civ. P. 19 (Advisory Committee Notes to 1966 Amendment). As a potential joint tortfeasor with defendant, NGPL was merely a permissive party. Temple, 498 U.S. at 7.

Defendant cites Provident Tradesmens Bank & Trust v. Patterson, 390 U.S. 102, 108-109 (1968) for the proposition that it "is well-settled that the owner is considered a necessary party" and stating "the U.S. Supreme Court determined that the vehicle owner in a traffic accident case is a necessary party." However, the U.S. Supreme Court in Temple distinguished Patterson. In Patterson, "the estate of a tort victim brought a declaratory judgment action against an insurance company. We assumed that the policyholder was a person who, under § (a), should be 'joined if feasible.' and went on to discuss the appropriate analysis under Rule 19(b), because the policyholder could not be joined without destroying diversity. After examining the factors set forth in Rule 19(b), we determined that the action could proceed without the policyholder; he therefore was not an indispensable party whose absence required dismissal of the suit." Temple, 498 U.S. at 7-8 (quotation marks and citations omitted).

In Patterson, the plaintiff sought a declaratory judgment against an insurer that a policy it had issued to Dutcher, covered Cionci who had been driving Dutcher's car at the time of the accident. The policy had a $100,000 limit for all claims arising out of a single accident. The plaintiff had a $50,000 liquidated claim against Cionci and sought to recover it from Dutcher's insurer. Dutcher was himself a defendant in two other actions arising out of the accident that had yet to be tried. The Supreme Court observed: "The action was for an adjudication of the validity of certain claims against a fund. Dutcher, faced with the possibility of judgments against him, had an interest in having the fund preserved to cover that potential liability. Hence there existed, when this case went to trial, at least the possibility that a judgment might impede Dutcher's ability to protect his interest, or lead to later relitigation by him." Patterson, 390 U.S. at 108. It

---

[1] Rule 20(a)(2) provides that persons "may be joined in one action as defendants if (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

was Dutcher's interest as the policyholder in preserving the fund created by the policy, not his ownership of the car, that led the Supreme Court to assume that Dutcher was a person who should be joined if feasible under Rule 19(a). Id. Thus, it was not his status as a potential joint tortfeasor but his status as the policyholder that made him a person who should be joined if feasible.

This fact made Patterson distinguishable from Temple where there were several potential joint tortfeasors, but plaintiff only sued one of them. "As potential joint tortfeasors with Synthes, Dr. LaRocca and the hospital were merely permissive parties. The Court of Appeals erred by failing to hold that the District Court abused its discretion in ordering them joined as defendants and in dismissing the action when Temple failed to comply with the court's order." Temple, 498 U.S. at 8. NGPL as a potential joint tortfeasor with defendant is merely a permissive party and plaintiff is not required to join it under Rule 19(a).

Rule 14(a)(1) allows a defendant to bring a third-party action against "a nonparty who is or may be liable to it for all or part of the claim against it." If defendant believes NGPL belongs in this case, Rule 14(a)(1) provides the proper vehicle to bring it in.

Negligence (12(b)(6))

In any negligence action, under Illinois law, a plaintiff must establish the existence of a duty, a breach of that duty, an injury that was proximately caused by that breach, and damages. Jablonski v. Ford Motor Co., 955 N.E.2d 1138, 1153-54 (Ill. 2011). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level, this requirement is met. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Plaintiff alleges defendant, as operator of the pipeline, had a duty to members of the public to alert them to the location of the underground pipeline by adequately marking on the surface the location of the underground pipeline and maintaining those markings in order to avoid people striking the pipeline while digging, that it breached that duty by failing to maintain the markings, that as a result of that failure plaintiff and the other members of the M & R Farms crew were unaware of the pipeline's location causing them to strike the pipeline with the tiling plow, causing an explosion and fire which injured him and caused him enduring pain and suffering and required him to incur medical expenses. This is enough to give defendant fair notice of the claim, the grounds on which it rests, and plausibly suggest plaintiff has a right to relief above the speculative level.

Willful and Wanton (12(b)(6))

Defendant argues plaintiff's willful and wanton conduct claim should be dismissed for failure to state a claim. Under Illinois law, "[t]here is no separate, independent tort of willful and wanton conduct. Rather, willful and wanton conduct is regarded as an aggravated form of negligence. To recover damages based upon a defendant's alleged negligence involving willful and wanton conduct, the plaintiff must allege and prove that the defendant owed a duty to the

plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injury." Krywin v. Chicago Transit Authority, 938 N.E.2d 440, 452 (Ill. 2010). As discussed above, plaintiff has adequately alleged defendant owed him a duty, breached that duty, and the breach caused his injury. Whether he can prove defendant's negligence (involving willful and wanton conduct or not) is for determination at a later stage in this case.

Illinois Public Utilities Act 12(b)(6)

Defendant argues it is not a public utility subject to the Illinois Public Utilities Act ("Act"). Under the Act the term "public utility" means and includes, inter alia, "every corporation . . . whatsoever that . . . operates or manages, within this State, directly or indirectly, for public use, any plant, equipment or property used or to be used for or in connection with, . . . the conveyance of oil or gas by pipe line." 220 ILCS 5/3-105(a)(3). For purposes of this case, to fall within this definition, defendant must operate or manage a gas pipeline in Illinois for public use. See Illinois Landowners Alliance v. Illinois Commerce Commission, 60 N.E.3d 150, 159 (Ill. App. 2016) affm'd, 90 N.E.3d 448 (Ill. 2017).

Defendant contends it does not fall within this definition because, as the complaint alleges, it is the operator of an interstate pipeline owned by NGPL and subject to the jurisdiction of the federal Pipeline and Hazardous Materials Safety Administration ("PHMSA"). Defendant asserts that Illinois law holds an interstate pipeline is not a public utility under the Act. It argues specifically, that two Illinois cases, Natural Gas Pipeline Company of America v. Illinois Commerce Comm'n, 210 N.E.2d 490 (Ill. 1965) and Peoples Energy Corp. v. Illinois Commerce Commission, 492 N.E.2d 551 (Ill. App. 1986), hold that NGPL, as an interstate pipeline owner, is not a public utility under the Act.

Defendant argues the Illinois Supreme Court, in Natural Gas Pipeline Company of America v. Illinois Commerce Comm'n, 210 N.E.2d 490 (Ill. 1965) "held that an interstate gas pipeline company is NOT a public utility subject to jurisdiction under the Act. Moreover, the Illinois Supreme Court specifically held that NGPL, as an interstate gas company, is not subject to the Act." Dkt # 28, p.9. However, the Illinois Supreme Court did not so hold.

The question presented in Natural Gas was whether the Illinois Commerce Commission could regulate and assess fees on "securities issued by interstate gas pipeline companies for the purpose of financing the construction and acquisition of facilities which are subject to regulation by the Federal Power Commission under the Natural Gas Act of 1938." Natural Gas, 210 N.E.2d at 490. The Court observed that the Natural Gas Act gave the Federal Power Commission the "authority to regulate the issuance of securities issued to finance the acquisition and construction of facilities subject to its jurisdiction," id., at 494, and that the authority granted to the Illinois Commerce Commission by Section 21 of the Illinois Public Utilities Act had the "prospect of interference" with the federal authority granted to the Federal Power Commission. Id. The Court then stated its holding as follows: "We hold, therefore, that the Illinois Commerce Commission is without authority to regulate the issuance of securities issued by natural gas pipeline companies to finance the construction and acquisition of facilities subject to the jurisdiction of the Federal Power Commission under section 7 of the Natural Gas Act." Id. The holding was limited to the regulation of the issuance of securities.

4

It did not hold that an interstate gas pipeline company is not a public utility under the Act. That issue was not before the Court.

Defendant asserts Peoples Energy Corp. v. Illinois Commerce Commission, 492 N.E.2d 551 (Ill. App. 1986) specifically held NGPL, as an interstate pipeline company, is not a public utility under the Act. However, the fact NGPL was "an interstate natural gas company which owns and operates facilities for the production, purchase, transmission, storage and sale of natural gas" and "is a natural gas company under the Natural Gas Act, and consequently, its facilities, wholesale rates and services are subject to regulation be the Federal Energy Regulatory Commission," id., at 561, was not a factor in the court's holding NGPL was not a public utility. Instead, Peoples Energy examined the "public use" aspect of the public utility definition in deciding NGPL was not a public utility.

A "public use of an article, product or service, carr[ies] with it the duty of the producer or manufacturer, or one attempting to furnish the service to serve the public and treat all persons alike, without discrimination." Mississippi River Fuel Corp. v. Illinois Commerce Commission, 116 N.E.2d 394, 398 (Ill. 1953). Peoples Energy upheld a trial court's factual finding that NGPL had only one retail customer and did not supply service to all who seek it, and therefore, did not supply the service as a public use and was not a public utility under the Act. Peoples Energy, 492 N.E.2d at 930. The court stated:

> "Natural Gas does not supply service to all who seek it, but rather, it has declined to supply service to certain applicants. Natural Gas has only one retail customer, and the record reflects that the Commission has previously held that Natural Gas is not a public utility by virtue of this one retail customer. In the past, the Commission has treated Natural Gas as an affiliated interest, and there is no indication in the record that the Commission has ever required Natural Gas to comply with the filing requirements which are applicable to all public utilities. Finally, the sales and service provided by Natural Gas to its public utility and municipal customers are rendered pursuant to service agreements and rate schedules that are part of the tariffs approved by the FERC, and not all of Natural Gas customers are treated alike. Accordingly, we conclude that Natural Gas is not a public utility under the Public Utilities Act, and therefore section 29 of the Act cannot serve to give the Commission jurisdiction over the reorganization."

Id., at 930-31.

Had the fact NGPL was an interstate pipeline company alone been enough to take it outside the coverage of the Act, Peoples Energy would have had no need to analyze whether the service NGPL provided was a public use under the Act. Neither Peoples Energy nor Natural Gas hold that the fact a pipeline company is an interstate pipeline company places it outside the coverage of the Act for all purposes.

As to Peoples Energy's holding NGPL was not a public utility under the Act, the holding was an affirmance of the trial court's factual finding that NGPL did not supply service for a public use. Whether, at the time the pipeline was struck by the M & R

5

Farms tiling plow, defendant was operating NGPL's pipeline for a public use requires a factual determination. Factual determinations cannot be made on a Rule 12(b)(6) motion to dismiss. The court cannot assume the facts as found by the trial court in Peoples Energy remain the same 30 plus years later.

Defendant also argues that Illinois law requires public utilities to file tariffs with the Illinois Commerce Commission and that neither defendant nor NGPL have filed such tariffs because they are not public utilities under the Act. Whether defendant or NGPL have filed tariffs is a question of fact which cannot be resolved on a motion to dismiss.

For the foregoing reasons, defendant's motion to dismiss [27] is denied.

Date: 6/17/2020          ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)